358 So.2d 1343 (1978)
DEPARTMENT OF REVENUE, Consisting of Ruebin O'd. Askew, As Governor of Florida, Bruce A. Smathers, As Secretary of State, Robert L. Shevin, As Attorney General, Gerald A. Lewis, As Comptroller, Philip F. Ashler, As Treasurer, Doyle Conner, As Commissioner of Agriculture, and Ralph Turlington, As Commissioner of Education; and J. Ed Straughn, As Executive Director of the Florida Department of Revenue, Appellants,
v.
AMREP CORPORATION, an Oklahoma Corporation, Silver Springs Shores, Inc., a Florida Corporation, Silver Springs Golf and Country Club, Inc., a Florida Corporation, Marion Realty, Inc., a Florida Corporation, Holiday Shores Tours, Inc., a Florida Corporation, Mid-Florida Lakes, Inc., a Florida Corporation, Florida Ridge Utilities Corp., a Florida Corporation, *1344 Panorama Inn of Florida, Inc., a Florida Corporation, Rolling Greens, Inc., a Florida Corporation, and Amrep Construction Corp., a New Mexico Corporation, Appellees.
No. 50549.
Supreme Court of Florida.
March 9, 1978.
As Modified On Denial of Rehearing May 25, 1978.
*1345 Robert L. Shevin, Atty. Gen., and E. Wilson Crump, II, Asst. Atty. Gen., Tallahassee, for appellants.
Parker D. Thomson and Susan W. Diner of Paul & Thomson, Miami, for appellees.

On Petition For Clarification
SUNDBERG, Justice.
This appeal tests the validity of the exemption of intercompany accounts receivable from the intangible personal property tax afforded to domiciliary corporate "affiliated groups" under Section 199.023(7), Florida Statutes (1975), when measured against the Equal Protection Clause of the United States Constitution.
The appellees in this cause are Amrep Corporation, an Oklahoma corporation having its principal place of business in New York, and nine wholly-owned subsidiaries of Amrep which are incorporated in or actually doing business in Florida. The members of the corporate group not incorporated in Florida, including Amrep, are duly qualified by the Secretary of State to do business in Florida. This action was commenced in circuit court by the appellees under the provisions of Section 199.242(1), Florida Statutes (1975),[1] to contest certain intangible personal property tax assessments totaling $422,512.58 rendered against them by the appellant, Department of Revenue, for the years 1972, 1973, and 1974. The complaint asserted that Section 199.023(7), Florida Statutes (1975),[2] defining "affiliated groups" for the purpose of creating the privilege of filing a consolidated return exempting intercompany accounts receivable violated appellees' right to equal protection of the laws, and rendered the assessment void. Such was alleged because the exemption is available only to those affiliated groups of corporations whose parents are either incorporated in Florida or maintain their principal place of business in Florida. The parties stipulated that with the exception of this residency *1346 requirement, appellees meet the definition of an "affiliated group." Appellees, therefore, took the position in their pleadings that they are entitled to file a consolidated return, which eliminates all intercompany receivables notwithstanding the fact that the parent corporation is not incorporated in Florida nor does it maintain its principal place of business in this State.
Relying on the statutory exemption [§ 199.052(5), Florida Statutes (1975)], appellees chose not to return their intercompany accounts for taxation during the years in question. The proposed assessment is based entirely on such intercompany accounts. Appellees have challenged other aspects of the assessment, but by stipulation the parties have agreed there would be no assessment at all if the intercompany accounts could not be taxed.
The instant cause arrives at this Court by way of appeal from a final judgment on the pleadings entered by the Circuit Court of the Second Judicial Circuit for Leon County, wherein the trial judge declared the statute unconstitutional on Equal Protection grounds. Prior to that final judgment, the Department had moved to dismiss the complaint on the grounds that appellees (plaintiffs below) had not exhausted administrative remedies. Consequently, the circuit court lacked jurisdiction to hear the case because the appellees had not complied with the provisions of the Administrative Procedure Act, Chapter 120, Florida Statutes (1975). Subsequently, Amrep filed an "Amendment to Complaint" asserting alternatively that the circuit court has jurisdiction under Section 86.011, Florida Statutes (1975),[3] in addition to Section 199.242(1), Florida Statutes (1975). Appellant then moved to strike this amendment on the ground that it did not cure the defects raised by the initial motion to dismiss. The motion to strike and motion to dismiss were denied. The Department then filed a notice of interlocutory appeal to the District Court of Appeal, First District, but took a voluntary dismissal of that appeal prior to adjudication on the merits.
At the culmination of pleadings, the court entered its final judgment, finding the statute unconstitutional and cancelling the assessments against Amrep's intercompany accounts receivable. However, the circuit judge refused to award costs to appellees, which order is the basis for Amrep's cross-assignments of error.
We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution, because the judgment of the trial court initially and directly passed upon the validity of Section 199.023(7), Florida Statutes (1975).
Three issues are presented for resolution by this appeal. They are:
(i) Whether appellee taxpayers have a right of action in the circuit courts of this State to challenge on constitutional grounds an intangible personal property tax assessment and obtain a declaration of their rights in view of the provisions of Chapter 120, Florida Statutes (1975);
(ii) Whether Section 199.023(7), Florida Statutes (1975), defining "affiliated groups" in such a way as to require that the common parent be incorporated in the State of Florida or have its principal place of business in this State violates the Equal Protection Clause of the Federal Constitution by denying an exemption for intercompany receivables *1347 to an affiliated group of corporations, otherwise qualified, whose parent is not domiciled in the State of Florida; and
(iii) Whether the circuit court erred in declining to award appellees their costs.
The gravamen of appellant's argument as to the standing issue is that the circuit courts do not retain jurisdiction to review actions taken by the Department of Revenue (DOR) when the parties seeking such review have not complied with the provisions of Chapter 120, Florida Statutes (1975). According to appellant, Section 199.242(1), Florida Statutes (1975), which was cited by appellees in their complaint as the basis for the circuit court's jurisdiction, was impliedly repealed by the Administrative Procedure Act. Appellant cites to Section 3, Chapter 74-310, Laws of Florida,[4] a general repealer, as support for the proposition that one of the major purposes of the act was to achieve uniformity in the public's interaction with state agencies. Toward this goal, the act was meant to replace all other provisions dealing with any form of administrative adjudication by a state agency and judicial review thereof.
Appellant concedes that DOR did not fall within the scope of Chapter 120 at one time, due to the constitutional mandate that the circuit courts have exclusive original jurisdiction in all cases involving legality of any tax assessment or toll. However, in 1972, the new Article V to the Florida Constitution was adopted. The provision adopted expressly authorized the legislature to change by general law the circuit courts' exclusive jurisdiction over tax assessments. Article V, Section 20(c)(3), Florida Constitution. It is asserted that the enactment of Chapter 120, Florida Statutes (1975), was a manifestation of the legislature's new constitutional authority.
According to appellant, it is settled law in Florida that the absence of a specific repealer does not prevent a later statute from repealing an earlier one, as the latest expression of the legislature governs. In Walton County v. Board of Public Instruction, 161 So.2d 45 (Fla. 1st DCA 1964), the court articulated the three circumstances under which one law could impliedly repeal an earlier one:

*1348 It is the settled law of this state that in order for a court to declare that one statute impliedly repeals another, it must appear that there is positive repugnancy between the two, or that the last was clearly intended to prescribe the only governing rule, or that it revises the subject matter of the former. (Footnote omitted) 161 So.2d at 46.
Appellant relies on the third of these bases to argue that Section 199.242(1) was impliedly repealed. While DOR concedes that the courts do not favor an implied repealer based on the first two grounds stated above, it contends that as to the third ground, this Court has found a presumption in favor of an implied repealer, where there is a complete and general revision of a subject by the legislature. See Orange City Water Co. v. Town of Orange City, 255 So.2d 257 (Fla. 1971); State v. Newell, 85 So.2d 124 (Fla. 1956); Brevard County v. Board of Public Instruction, 159 Fla. 869, 33 So.2d 54 (1947); Realty Bond and Share Co. v. Englar, 104 Fla. 329, 143 So. 152 (1932). Appellant concedes that Department of Revenue v. University Square, Inc., 336 So.2d 371 (Fla. 1st DCA 1975), cert. denied, 342 So.2d 1101 (Fla. 1977), is contrary to this hypothesis, but dismisses this case as being an aberration from the general principle. It is asserted that the provisions of the Administrative Procedure Act show no intent to retain any provisions in the 1973 statutes regarding administrative determinations by an agency of a party's rights or judicial review of such determinations, after the effective date of the Administrative Procedure Act.
Appellant maintains that appellees should find no greater solace under the provisions of Section 86.011, Florida Statutes (1975). The express language of that section suggests that it does not attempt to enlarge the circuit courts' jurisdiction to render declaratory judgments. It merely indicates that nothing in the new Administrative Procedure Act repeals anything in Chapter 86, Florida Statutes (1975). School Board of Flagler County, v. Hauser, 293 So.2d 681 (Fla. 1974).
According to appellant, Department of Revenue of Florida v. Young American Builders, 330 So.2d 864 (Fla. 1st DCA 1976), which case the lower court relied on in denying appellant's motion to dismiss and motion to strike, is overbroad. Appellees' interpretation of the holding of that case is that a circuit court has jurisdiction to determine a constitutional issue anytime it is raised. Appellant rejects such notion, arguing that while an agency may not have the authority to render a portion of a statute unconstitutional, that determination should ultimately be made by the district courts in accordance with the Administrative Procedure Act after all of the issues have been disposed of at the administrative level. Any other interpretation would not satisfy the doctrine of exhaustion of administrative remedies.
We reject the position of the appellant for two reasons. First, Section 26.012, Florida Statutes (1975), defining the jurisdiction of the circuit courts of this State provides, in part:
(2) They shall have exclusive original jurisdiction:
* * * * * *
(c) In all cases in equity including all cases relating to juveniles except traffic offenses as provided in chapters 39 and 316;
* * * * * *
(e) In all cases involving legality of any tax assessment or toll;
In like fashion, Article V, Section 20(c)(3), Florida Constitution, provides, inter alia, that "until changed by general law" circuit courts shall have exclusive original jurisdiction "in all cases involving legality of any tax assessment or toll." We concur with the holding and reasoning of the District Court of Appeal, First District, in Department of Revenue v. University Square, Inc., supra, that there are no provisions in Chapter 120, Florida Statutes, including Section 3 of Chapter 74-310, Laws of Florida, which directly or by implication divest the circuit courts of their historical jurisdiction to determine the issues in contested tax assessment *1349 actions such as the dispute in the instant case. Accord, Department of Revenue v. Crisp, 337 So.2d 404 (Fla. 2d DCA 1976), and Florida Department of Revenue v. Estero Bay Development Corp., 336 So.2d 479 (Fla. 2d DCA 1976).
By its very terms Section 120.73, Florida Statutes (1975), provides that nothing in Chapter 120, Florida Statutes (1975), shall be construed to repeal any provision of the Florida Statutes which grants the right to a proceeding in the circuit court in lieu of an administrative hearing or to divest the circuit courts of jurisdiction to render declaratory judgments under the provisions of Chapter 86, Florida Statutes (1975).
Furthermore, the challenge here is to the constitutional validity of the statutory section creating the exemption for "affiliated groups." The attack is on the facial validity of the statute as denying equal protection of the law guaranteed by the Fourteenth Amendment to the Constitution of the United States. As noted by the District Court of Appeal, First District, in the Department of Revenue of Florida v. Young American Builders, supra, which involved a constitutional attack on a DOR rule concerning the documentary stamp tax:
The Administrative Procedure Act could not and does not relegate Fourteenth Amendment questions to administrative determination, nor restrict the occasions for judicial consideration of them by reference in § 120.73 to ch. 86, F.S., nor otherwise impair the judicial function to determine constitutional disputes. 330 So.2d 864, 865.
We hold, therefore, that this action was properly cognizable before the circuit court.[5]
Respecting the merits of appellees' constitutional assault upon Section 199.023(7), Florida Statutes (1975), we observe that DOR does not seriously contend that the classification contained therein is not discriminatory vis-a-vis foreign "affiliate group" corporations. The DOR contends essentially that the discrimination is not invidious and, hence, no violation of the Equal Protection Clause is involved. Appellant relies upon the oft-repeated general proposition that in matters of taxation the states are possessed of broad latitude in creating classifications without offending the Equal Protection Clause or Privileges and Immunities Clause of the Federal Constitution. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940); State v. Andersen, 208 So.2d 814 (Fla. 1968). DOR also alludes to the heavy burden resting upon one who asserts the unconstitutionality of a statutory scheme. Gray v. Central Florida Lumber Co., 104 Fla. 446, 147 So. 320, 141 So. 604 (1932). The pole star for judging the validity of a particular classification is whether that classification "rest[s] upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Ohio Oil Co. v. Conway, 281 U.S. 146, 50 S.Ct. 310, 74 L.Ed. 775 (1929). Accord, Rollins v. State, 354 So.2d 61 (Fla., opinion filed January 12, 1978); Gammon v. Cobb, 335 So.2d 261 (Fla. 1976).
Appellant argues there are two rational bases for upholding the classification inherent in Section 199.023(7), Florida Statutes (1975). First, it is asserted that the exemption provides a form of tax equalization. According to appellant, the State may discriminate in favor of domiciliary corporate "affiliated groups" (those whose parent is either legally or commercially domiciled in Florida) because the initial tax base of a Florida parent is substantially greater than that of a wholly out-of-state parent corporation. This is so because under controlling law the situs of movable property such as *1350 intangibles for purposes of ad valorem taxation is the domicile of the owner, making domicile the central question of the extent of a taxpayer's intangible tax base for purposes of imposing the annual one-mill levy prescribed by Section 199.032(1), Florida Statutes (1975). Under this rule a Florida domiciliary who owns intangible personal property is subject to tax on that property to the State of Florida, even though the physical evidence of that intangible property may be located in another state, and even though the intangibles might arise out of business conducted in another state. This result obtains even though such intangible property is, in fact, taxed by the foreign jurisdictions in which they arose. See Florida Steel Corp. v. Dickinson, 328 So.2d 418 (Fla. 1976). An out-of-state corporation which maintains its commercial domicile (principal place of business) in Florida is likewise subject to Florida's intangible personal property tax on the basis of the "owner-domicile" theory. Genesee Corp. v. Owens, 155 Fla. 502, 20 So.2d 654 (1945); cf. Gay v. Bessemer Properties, 159 Fla. 729, 32 So.2d 587 (1947). On the contrary, a foreign corporation which does business in Florida without maintaining its principal place of business in this State is subject to Florida's intangible personal property tax only on its intangibles actually generated by business conducted in Florida. See Section 199.112, Florida Statutes (1975). The consolidated return for domiciliary "affiliated groups" with the attendant exemption provided by Section 199.023(7) is espoused by appellant to be a device to alleviate the seeming inequity which flows from the "owner-domicile" theory for taxation of intangible personal property.
The second string to the State's bow is predicated on the premise that the tax exemption in question fosters the goal of encouraging corporate conglomerates to establish headquarters in Florida as well as fostering those already domiciled in the State. Appellant maintains that such considerations have been recognized by this Court to supply the rational basis for classification which will obviate an equal protection attack. In Faircloth v. Mr. Boston Distiller Corp., 245 So.2d 240 (Fla. 1970), the Court upheld as against an equal protection attack, legislation which imposed excise taxes at different rates on manufacture of alcoholic beverages exclusively from raw materials produced in Florida as opposed to those manufactured in whole or in part from raw materials produced in other states. In so holding the Court observed:
As pointed out by the appellants, this court has in the past on numerous occasions upheld the validity of special tax exemptions or rates which were granted for the purpose of encouraging state industry. 245 So.2d at 247.
See also State v. Andersen, supra, which approved disparate tax treatment between notes and obligations secured by liens on real property, and those which are not. The Court therein considered legitimate for classification purposes the goal of attracting investors in Florida real estate development. It should be here noted that neither case involved discrimination against nonresidents in ad valorem tax treatment.
Appellees respond by suggesting that the State's position is predicated on general principles with which the taxpayers have no quarrel, but that such principles are inapplicable to the instant case. Appellees contend that this case is controlled by a trilogy of decisions from the Supreme Court of the United States: WHYY, Inc. v. Borough of Glassboro, 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968); Allied Stores of Ohio, Inc. v. Bowers, supra; Wheeling Steel Corp. v. Glander, 337 U.S. 562, 69 S.Ct. 1291, 93 L.Ed. 1544 (1948).
In Wheeling, the tax at issue was an intangible tax on accounts receivable. The exemption involved receivables arising from (i) goods sold by an agent in another state but shipped from Ohio as well as (ii) goods sold by an agent in Ohio but shipped from another state. The Ohio taxing authorities construed and applied the statutes to exempt both classes of receivables from taxation where the taxpayer was an Ohio resident and to tax the same type receivables where the taxpayer was a nonresident. In addressing the issue of the rights of a foreign *1351 corporation concerning matters of ad valorem taxation, as distinguished from a franchise, privilege, occupation or income tax, the Court held:
After a state has chosen to domesticate foreign corporations [by permitting the corporation to qualify to conduct business within the state], the adopted corporations are entitled to equal protection with the state's own corporate progeny, at least to the extent that their property is entitled to an equally favorable ad valorem tax basis. 337 U.S. at 571-572, 69 S.Ct. at 1296.
With respect to the specific intangible tax in contest, the Court in Wheeling observed a classic example of unequal treatment in violation of the Fourteenth Amendment because a receivable of identical economic derivation and identical contacts with the State was taxed or exempt depending solely on the residence of the taxpayer:
It seems obvious that appellants are not accorded equal treatment, and the inequality is not because of the slightest difference in Ohio's relation to the decisive transaction, but solely because of the different residence of the owner. 337 U.S. at 572, 69 S.Ct. at 1297.
In WHYY, the principle of Wheeling was reasserted. There, the taxpayer was a nonprofit Pennsylvania corporation authorized to transact business in New Jersey. The corporation, which qualified in all other respects for exemption, was denied an exemption from state real and personal property taxes solely on the ground that the statute exempted only nonprofit corporations incorporated under the laws of New Jersey. On the premise that the classification avoided the administrative burden of determining whether the taxpayer was a qualified nonprofit corporation in the state of its domicile, the Supreme Court of New Jersey determined that the classification was not "wholly irrational" and sustained denial of the exemption. In rejecting the "administrative burden" theory, the United States Supreme Court concluded that the principles of equal protection prohibited New Jersey from imposing additional conditions which would deny the foreign taxpayer an opportunity equivalent to the resident taxpayer "... to demonstrate that it meets the requirements for a nonprofit corporation under local law." 393 U.S. at 120, 89 S.Ct. at 288. Echoing the language of Wheeling, the court concluded that "appellant has not been `accorded equal treatment, and the inequality is not because of the slightest difference in [New Jersey's] relation to the decisive transaction, but solely because of the different residence of the owner.'" 393 U.S. at 120, 89 S.Ct. at 288. In similar settings the courts of Massachusetts and Michigan have reached the same conclusion in reliance upon WHYY. See Mary C. Wheeler School, Inc. v. Board of Assessors of Seekonk, 331 N.E.2d 888 (Mass. 1975); American Youth Foundation v. Township of Benona, 37 Mich. App. 722, 195 N.W.2d 304 (1972).
Allied Stores of Ohio, Inc. v. Bowers, supra, the third case in the trilogy, intervenes in time between Wheeling and WHYY. The parties are in dispute concerning the significance of that decision. Appellant asserts that Allied Stores represents a limitation upon Wheeling. On the other hand, appellees contend that the failure of the Court to mention that decision in WHYY coupled with its reliance on Wheeling demonstrates either an attempt to distinguish or recede from that case and a reaffirmation of Wheeling. Allied Stores involved an Ohio resident's challenge on equal protection grounds to another Ohio statute which exempted "merchandise or agricultural products belonging to a nonresident ... if held in a storage warehouse for storage only." In upholding the exemption, a majority of the Court distinguished Wheeling on the ground that in Wheeling Ohio had enacted exemptions "admittedly discriminatory" on the face of the statutes as an inducement for reciprocal provisions by other states. 358 U.S. at 529, 79 S.Ct. 437. The Court determined that the stated purpose of the statutes in Wheeling made them invidiously discriminatory while the enactment in Allied Stores contained no such express legislative intent, thus leaving the United States Supreme *1352 Court free to discern the objective of the legislation.
What were the special reasons, motives or policies of the Ohio Legislature for adopting the questioned proviso we do not know with certainty, nor is it important that we should, (citation omitted), for a state legislature need not explicitly declare its purpose. But it is obvious that it may reasonably have been the purpose and policy of the State Legislature, in adopting the proviso, to encourage the construction or leasing and operation of warehouses in Ohio by nonresidents with the attendant benefits to the State's economy, or to stimulate the market for merchandise and agricultural products produced in Ohio by enabling nonresidents to purchase and hold them in the State for storage only, free from taxes, in anticipation of future needs. Other similar purposes reasonably may be conceived. 358 U.S. at 528-529, 79 S.Ct. at 442.
Ironically, the majority opinion seems to indicate that in areas where questions of discrimination may arise states should not declare their purpose for tax legislation, as was done in the Wheeling statute, for in the absence of stated legislative intent the Court will be free to speculate on purposes which will support the classification.
Justice Brennan, in a concurring opinion, questioned the majority's grounds for distinguishing Wheeling. He observed that the statute in Allied Stores "discriminates" against residents in the same fashion that the statute in Wheeling "discriminated" against nonresidents. With respect to the distinction drawn by the majority, viz., that a reasonable basis for difference could be conceived, he suggested that an equally reasonable ground for the statute in Wheeling could be found in the state's desire to favor its own residents by giving them an advantage over foreign competition. See Colgate v. Harvey, 296 U.S. 404, 56 S.Ct. 252, 80 L.Ed. 299 (1935). Justice Brennan disregarded the distinction that the Wheeling statute specifically stated an invalid purpose, by suggesting that the "reciprocity" plan was nothing more than a rejected argument by which the state had tried to show that the statute was not discriminatory.
Mr. Justice Brennan's basis for upholding the proviso in Allied Stores, a position consistent with the Wheeling holding, would have been to regard the equal protection clause as an instrument of federalism. He concluded that the Court in the Wheeling case protected our federal system by denying Ohio the power to discriminate in favor of its residents against residents of other states of the federation, while in Allied Stores the proviso operated merely against Ohio residents and presented no action by the state which disrupts the federal pattern. See Colgate v. Harvey, supra. Thus, limited by the concept of federalism, it appears that Justice Brennan's rationale grounds that state's power to classify on a narrower basis than does the majority opinion in Allied Stores, which limits the power by requiring only the presence of a "valid purpose which reasonably can be conceived to justify" the classification.
Because we believe that the historical development of permissible taxation of foreign corporations under the Equal Protection Clause and the decision in WHYY bear out Justice Brennan's analysis, we conclude that Section 199.023(7), Florida Statutes (1975), does, in fact, violate the Equal Protection Clause of the United States Constitution. Since the embryonic position of Chief Justice Taney that a corporation "must dwell in the place of its creation, and cannot migrate to another sovereignity,"[6] the law has evolved to recognize that while the states enjoy wide latitude in placing conditions upon the entry of a foreign corporation to transact business within a state other than the state in which it is incorporated, once a foreign corporation is admitted and domesticated, it enjoys equal protection of the laws of the admitting state to the same extent as domiciliary corporations. See Concordia Fire Insurance Co. v. Illinois, *1353 292 U.S. 535, 54 S.Ct. 830, 78 L.Ed. 1411 (1934); Power Manufacturing Co. v. Saunders, 274 U.S. 490, 47 S.Ct. 678, 71 L.Ed. 1165 (1927); Hanover Fire Insurance Co. v. Harding, 272 U.S. 494, 47 S.Ct. 179, 71 L.Ed. 372 (1924); Air-Way Electric Appliance Corp. v. Day, 266 U.S. 71, 45 S.Ct. 12, 69 L.Ed. 169 (1924); Southern R. Co. v. Greene, 216 U.S. 400, 30 S.Ct. 287, 54 L.Ed. 536 (1910); Sholley, Corporate Taxpayers and the Equal Protection Clause, 31 Ill.L. Rev. 463 (1936).
The Wheeling decision represents a fruition of the historical development of the application of the Equal Protection Clause to foreign corporations. That the principles of Wheeling were not contradicted by Allied Stores seems apparent in view of the decision in WHYY, which applied the Wheeling rationale. Reference to Mr. Justice Brennan's concurring opinion in Allied Stores not only harmonizes that case with the other two of the trilogy, but it supplies a two-tier model for analysis under the Equal Protection Clause. Where a nonresident makes a challenge to a state's tax scheme it must first be determined whether the classification discriminates against the nonresident in such fashion as to unduly impinge upon our system of federalism which the Equal Protection Clause is intended to foster and protect along with the Commerce Clause and the Privileges and Immunities Clause. If no such impediment is found, the traditional test of a rational basis for the classification must then be applied. If the tax scheme fails to pass muster under either test, the statute must fall. Applying this analysis to the instant case, we determine that the ad valorem tax at issue must fail because within the rationale of Wheeling the unequal treatment of identical receivables is based solely on the residence of the parent and is not differentiated in any way on the basis of where the receivable arose or its actual contacts with the State of Florida.
The remaining issue concerning the award of costs we determine adversely to the appellees on their cross-appeal. There is nothing contained in Section 199.242, Florida Statutes (1975), which implies appellees' entitlement to an award of costs. Although Chapter 86, Florida Statutes (1975), authorizes the trial court to award costs as are equitable, this authority in the trial judge is subject to his exercise of sound judicial discretion. In view of the fact that DOR was obliged to defend the constitutionality of the statute under which it proceeded there can be no serious contention that the trial court abused its discretion by ruling, in effect, that each side should bear its own costs.
For the reasons stated above, the final judgment on the pleadings entered by the trial court is affirmed.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, HATCHETT and KARL, JJ., concur.
NOTES
[1] § 199.242(1), Fla. Stat. (1975), provides:

"If any taxpayer shall feel aggrieved by any action of the department, he shall have the right to a conference with the department and shall request such a conference in writing, within thirty days after issuance of written notice of such action with such data as may be relevant in support thereof. All exceptions and objections to the actions of the department must be filed with the department in duplicate at least 10 days prior to the date set for such conference. If the department's decision, following the conference, is determined adversely to the taxpayer, the taxpayer shall receive formal written notice of the department's determination and shall thereafter have the right within the time and in the manner provided by the Florida Appellate Rules to have the department's determination reviewed in appropriate proceedings in either the circuit court of Leon County or the judicial circuit of Florida wherein his residence or place of business is located."
[2] § 199.023(7), Fla. Stat. (1975), states:

"`Affiliated group' means one or more chains of includable corporations connected through stock ownership with a common parent corporation, incorporated in or having its principal place of business in the state, which is an includable corporation, providing that:
(a) Stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of each of the includable corporations, excepting therefrom the common parent corporation, is owned directly by one or more of the other includable corporations; and
(b) The common parent corporation owns directly stock possession at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of at least one of the other includable corporations.
As used in this subsection the term `nonvoting stock' does not include nonvoting stock which is limited and preferred as to dividends."
[3] § 86.011, Fla. Stat. (1975), provides:

"The circuit courts have jurisdiction to declare rights, status and other equitable or legal relations whether or not further relief is or could be claimed. No action or procedure is open to objection on the ground that a declaratory judgment is demanded. The court's declaration may be either affirmative or negative in form and effect and such declaration has the force and effect of a final judgment. The court may render declaratory judgments on the existence, or nonexistence:
(1) Of any immunity, power, privilege or right; or
(2) Of any fact upon which the existence or nonexistence of such immunity, power, privilege or right does or may depend, whether such immunity, power, privilege or right now exists or will arise in the future. Any person seeking a declaratory judgment may also demand additional, alternative, coercive, subsequent or supplemental relief in the same action."
[4] § 3, Ch. 74-310, Laws of Florida, states:

"(1) The intent of the legislature in enacting this complete revision of chapter 120, Florida Statutes, is to make uniform the rule-making and adjudicative procedures used by the administrative agencies of this state. To that end, it is the express intent of the legislature that the provisions of this act shall replace all other provisions in the Florida Statutes, 1973, relating to rule making, agency orders, administrative adjudication or judicial review, except marketing orders adopted pursuant to chapters 573 and 601, Florida Statutes, and that the division of statutory revision of the joint legislative management committee is directed to prepare a reviser's bill to conform the Florida Statutes to such intent.
"(2) All administrative adjudicative proceedings begun prior to the effective date of this act shall be continued to a conclusion under the provisions of the Florida Statutes, 1973; except that administrative adjudicatory proceedings which have not progressed to the stage of a hearing may, with the consent of all parties and the agency conducting the proceeding, be conducted in accordance with the provisions of this act as nearly as is feasible.
"(3) Notwithstanding any provision of chapter 120, Florida Statutes, all public utilities and companies regulated by the public service commission shall be entitled to proceed under the interim rate provisions of chapter 364, Florida Statutes, or the procedures for interim rates contained in Committee Substitute for House Bill 1542 of the 1974 legislative session, or as otherwise provided by law.
"(4)(a) All prior rules not adopted following a public hearing as provided by statute shall be void and unenforceable after October 1, 1975, and shall be stricken from the files of the department of state and from the files of the adopting agency.
(b) All rules in effect on, or filed with the department of state prior to, the effective date of this act, except those adopted following a public hearing as provided by statute, shall be forthwith reviewed by the agency concerned on the written request of a person substantially affected by the rule involved and this provision. The agency concerned shall initiate the rule-making procedures provided by this act within ninety days after receiving such written request. If the agency concerned fails to initiate the rule-making procedures within ninety days, the operation of the rule shall be suspended. This provision shall control § 120.54(4), Florida Statutes.
(c) All existing rules shall be indexed by January 1, 1975."
[5] The conclusion that this action is cognizable as a matter of original jurisdiction in the circuit court does not affect the jurisdiction of the district courts of appeal and this Court to review agency action pursuant to § 120.68, Fla. Stat. (1975).
[6] Bank of Augusta v. Earle, 13 Pet. 519, 588, 38 U.S. 519, 588, 10 L.Ed. 274 (1839).