386 So.2d 844 (1980)
June RICE and Stephen Dudley Stitt, Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. NN-104.
District Court of Appeal of Florida, First District.
August 8, 1980.
*846 June Rice and Stephen D. Stitt, Gainesville, for themselves.
Chester G. Senf, Asst. Gen. Counsel, HRS, Tallahassee, for appellee.
ROBERT P. SMITH, Jr., Judge.
Appellants June Rice and Stephen Stitt are married and are the parents of an infant son whom they wish to register from birth in the State's vital statistics as Austin John Rice or Austin John Rice-Stitt. By this appeal they complain that the Department of Health and Rehabilitative Services, acting through a subsidiary unit and officials who were unnecessarily named parties appellee,[1] has refused to register the child's surname as Rice or Rice-Stitt. By letter written January 16, 1979, the HRS "Supervisor, Amendment Unit, Vital Statistics" advised appellants that Section 382.16(5)(a), Florida Statutes (1979),[2] requires the child to be surnamed Stitt, after his father. Appellants urge on this appeal that the statute's direction that "the surname of the child shall be entered on the certificate as that of the husband" does not exclude the use as well of the wife and mother's surname, and that the restricted construction placed on the statute by HRS violates appellants' constitutional right to equal protection of the law, due process of law, and freedom of speech.
We take note preliminarily of the doubtful "agency action" on which these questions of statutory construction and constitutional validity are predicated. We have only the letter of a unit supervisor to evidence HRS's official action in this matter. There is no agency order recognizable under Section 120.59, Florida Statutes (1979), and there have been no formal or informal proceedings under Section 120.57. Appellants have not been denied, nor have they requested, such proceedings. In a sense, HRS has taken free-form action only. Capeletti Brothers, Inc. v. Dept. of Transportation, 362 So.2d 346 (Fla. 1st DCA 1978), cert. den., 368 So.2d 1374 (Fla. 1979). *847 While it therefore may be debated whether the unit supervisor's letter of January 16, 1979, was "equivalent" to an agency order underlying the appeal,[3] no party has contested the matter. We treat such questions pragmatically, dismissing an appeal from free-form action if appellant neglected a clear point of entry to Section 120.57 proceedings, or if agency proceedings have been undertaken since the appeal, Krestview Nursing Home v. Dept. of Health and Rehab. Services, 381 So.2d 240 (Fla. 1st DCA 1979); and deciding the appeal to secure a party remedies wrongfully denied by an agency, or if the free-form action is authentic beyond doubt and nothing can be gained through further agency proceedings. Harris v. Florida Real Estate Comm'n, 358 So.2d 1123, 1125 (Fla. 1st DCA 1978), cert. den., 365 So.2d 711 (Fla. 1978); General Development Corp. v. Division of State Planning, 353 So.2d 1199, 1207 (Fla. 1st DCA 1977).
In this case we proceed with the appeal in order to prescribe proceedings to be had on remand, leading to a final order construing Section 382.16(5) in light of a fully-developed record and preserving the pendant constitutional question for our later review, if necessary.
Our requirement of an agency order construing the governing statute in this case is no empty formality. The principal objective of many APA processes is to expose policy errors which have become habitual in an agency's free-form routine and to subject agency heads "to the sobering realization [that] their policies lack convincing wisdom... ." McDonald v. Dept. of Banking & Finance, 346 So.2d 569, 583 (Fla. 1st DCA 1977). Should this court intrude prematurely, before the agency head has had an opportunity to examine the de facto policy which underlies a free-form decision, an important APA goal will be lost and we shall have diminished the quality of agency performance, as Alexander Bickel said so descriptively, "by denuding them of the dignity and burden of their own responsibility."[4]
We therefore will remand the case to HRS and to the Division of Administrative Hearings, Department of Administration, for proceedings under Section 120.57(1), and for entry of the order required by Section 120.59. Appellants represent that HRS construes Section 382.16(5)(a) to require that the father's surname, and that name alone, be registered as the surname of a child born to the father's marriage. Whether HRS so construes the statute is for HRS to say by order; in proceedings to determine a party's substantial interests, the agency's duty to speak by an order is invariable, even when the statute may seem to the agency to admit of only one possible construction. Appellants urge that the statute is susceptible to a construction allowing registration of both parents' surnames as the child's hyphenated surname. Whether that is so is for HRS to say in the first instance, by an order. Appellants' construction of the statute is not necessarily foreclosed by a contrary HRS order entered earlier in proceedings to which appellants were not parties; there has been no rulemaking to construe the statute, and as to these appellants that earlier order has no res judicata effect. See McDonald, supra; State Dept. of Health and Rehab. Serv. v. Barr, 359 So.2d 503, 505 (Fla. 1st DCA 1978):
... Agency orders rendered in Section 120.57 proceedings may ... indirectly determine controversies and affect persons yet unborn. But the rule is stare decisis, not res judicata. If such a person's substantial interests are to be determined in the light of a prior agency order or declaratory statement, Section 120.57 proceedings will afford him the opportunity to attack the agency's position by appropriate means, and Section 120.68 will provide judicial review in due course.
*848 Our action in this case necessarily implies, and we here confirm, that we consider it entirely proper for a district court of appeal to pass on the constitutionality of a statute or rule when that is necessary in reviewing agency action, though there has been no agency decision on the constitutional question nor could there have been. At least twice, in Cross Key Waterways and Estuary Properties,[5] this court decided important constitutional questions inhering in agency proceedings notwithstanding the agency's inability to decide such a question, and without regard for whether the question was formally and futilely raised before the agency. A district court's resolution of a constitutional or other legal question may occasionally be stymied by the absence of a complete record necessary for the decision, as the case now before us illustrates. But that may be remedied, as this case also illustrates, by remand to the agency or to the agency and DOAH. Sections 120.57, 120.68(6), (11), (13).
We recognize that sister courts have recently expressed a contrary view, which we understand to be that an agency decision on a question of law is a necessary predicate for the district court's power to decide that same question, and consequently that legal questions not cognizable by an agency must be diverted to circuit court.[6] We respectfully disagree. Considering as we do that the extent of a district court's decision on review of agency action is ultimately a question of policy rather than power,[7] we think there is precious little sound policy to justify dividing an administrative controversy into nonconstitutional issues and two kinds of constitutional issues and parceling them out to separate agency and circuit court litigations which may eventually merge again in the same district court of appeal or, worse, in different district courts. See, e.g., Coulter v. Davin, supra fn. 6, 373 So.2d at 428; Laborers' International Union of North America, Local 517 v. The Greater Orlando Aviation Authority, 385 So.2d 716 (Fla. 5th DCA 1980). Neither does it seem to us desirable to bifurcate the proceedings and stay agency proceedings on nonconstitutional issues until a circuit court renders judgment on constitutional issues. E.g., E.T. Legg and Co. v. Franza, supra fn. 6. Such a process engages judicial labor when the contender may yet be satisfied administratively, so undermining the twin policies of primary jurisdiction and exhaustion of remedies,[8] and it rushes constitutional questions to judgment while potentially dispositive nonconstitutional questions are still open, so undermining "the well-settled rule that such a [constitutional] question ordinarily will be decided only when necessary to a disposition of the cause." In re Estate of Sale, 227 So.2d 199, 201 (Fla. 1969). The final alternative of leaving the case intact *849 and the constitutional and nonconstitutional issues unified, but bootstrapping the whole controversy into circuit court, is obviously an abandonment of Chapter 120.
By asserting the power of district courts of appeal to decide constitutional questions on administrative appeals, we do not derogate the power of circuit courts to render declaratory judgments on the constitutionality of statutes. Sections 86.011, 120.73, Florida Statutes (1979). See Gulf Pines, supra fn. 7. But the circuit court's power to judge a statute's constitutionality in a case taken out of the administrative process does not displace a district court's power to render the same kind of judgment in a case not removed from the administrative process. The question of whether a circuit court should intervene to decide a constitutional issue, as the Supreme Court stated in Gulf Pines, is "ultimately [a question] of policy rather than power," supra fn. 7. So a circuit judge, importuned to intervene in agency proceedings in order to decide a constitutional issue, would appropriately consider, as did the Supreme Court in Gulf Pines, whether "... under the circumstances presented ... the claim [is] suitable for circuit court consideration." 361 So.2d at 699-700. One of those circumstances to be considered is whether, as in Gulf Pines, resolving the constitutional question is necessary to assure a predicate for the administrative proceedings, so avoiding the "pointless" expenditure of time and expense in a futile administrative effort. 361 So.2d at 699. When it is necessary to take evidence and find facts on a constitutional issue, it would seem appropriate for the circuit court to weigh the value of an immediate circuit court evidentiary hearing against the value of allowing the administrative process to continue unabated and undivided until the constitutional question can be presented, in context of an agency order deciding all other questions, to a district court of appeal. If at that point factfinding on the constitutional issue still seems necessary, the district court has full power to frame the issues and remand for the necessary hearing. Section 120.68(6), (13).
In other words, we again acknowledge that circumstances may make circuit court preemption of constitutional issues necessary and desirable at an early stage, even at the expense of delaying the administrative process, bifurcating the otherwise unified cause, or deciding a constitutional question when other dispositive issues await administrative determination. Compare State ex rel. Dept. of General Serv. v. Willis, 344 So.2d 580, 590 (Fla. 1st DCA 1977).[9] But the circumstances justifying circuit court intervention do not include the supposed incapacity of a district court of appeal to reach and decide a constitutional issue which has been carried unresolved to that part of the judicial system through the regular processes of Chapter 120. See Department of Revenue v. Amrep Corp., 358 So.2d 1343, 1349 fn. 5 (Fla. 1978).[10]
In this decision we are not troubled by the principle that an appellate court ordinarily will not take up questions not passed on or presented to the trial court. That discipline is respected by appellate courts in recognition of and in deference to the distinct role of trial courts in the unitary judicial system. See Hartford Fire Ins. Co. v. Hollis, 58 Fla. 268, 50 So. 985 (1909); South Dade Farms, Inc. v. Peters, 107 So.2d 30 (Fla. 1958); Paul v. Kanter, 155 So.2d 402 (Fla. 3d DCA 1963). That practice *850 need not deter us from considering freshly raised questions of constitutional law, or any question of law which inheres in the case and may fairly be decided on the record, in appeals from agency action. For in reviewing agency action we are not reviewing the judgment of another court of law, and the deference due the agency is of another kind, less for its judgment on questions of law than for its greater familiarity with the statutory scheme and its expertise in the field regulated. Moreover, when an appeal is taken from agency action to a district court, that is the first court to receive the case and is the first tribunal to which a claim of statutory unconstitutionality can effectively be made. The district court's ultimate task under Section 120.68 is to review agency "action," not agency judgments, and the district court is empowered to review that "action" completely, though all dispositive legal issues were not or could not have been decided by the agency. The district court's decision
... may be mandatory, prohibitory, or declaratory in form, and it shall provide whatever relief is appropriate irrespective of the original form of the petition. The court may: [¶] 1. Order agency action required by law, order agency exercise of discretion when required by law, set aside agency action, remand the case for further agency proceedings, or decide the rights, privileges, obligations, requirements, or procedures at issue between the parties. ... Section 120.68(13)(a)1, Florida Statutes (1979) (emphasis added).
We do not intimate how Section 382.16(5)(a) should be construed by HRS, nor need we decide by what test the constitutionality of the statute is to be judged, if that becomes necessary. Yet, we add the following comments and directions concerning the scope of agency proceedings to be had on remand in order to better inform HRS's construction of the statute and our own judgment when the case returns.
It is appropriate that HRS, in construing the statute, and this court, in later reviewing that action and deciding the pendent constitutional question, examine factually the nature and extent of the State's interest in organizing and preserving information concerning births and family relationships under the father's surname, as distinguished from the mother's surname or the hyphenated surnames of both parents. In other words, to the extent Section 382.16(5)(a) should be interpreted as requiring use of the father's surname exclusively, effectively surnaming each child born to a marriage according to how his father, and his father's father, was surnamed, we assume the State has some kind of fairly substantial interest, whether as parens patriae or merely to keep account of people, justifying that regulation. If the statute merely enacts custom, see Davis v. Roos, 326 So.2d 226 (Fla. 1st DCA 1976), that too should be factually determinable.
These appellants contest that the statute requires their son to be named from birth as Austin John Stitt, rather than as Austin John Rice or Rice-Stitt. If the statute does so require, they contest its constitutionality. Accordingly, HRS on remand will build a record on which it can enter an order expounding the factual premises on which the regulation rests; the reasonableness of the classifications made by the statute; the extent and weight of the State's interest in the end sought to be achieved; and the availability of less restrictive alternative means of achieving the goals of the statute. That kind of agency process is precisely what is prescribed by Chapter 120 when a mixed question of fact and policy, underlying one of statutory construction, is presented in proceedings to determine a party's substantial interests. Florida Cities Water Co. v. Florida Pub. Serv. Comm'n, 384 So.2d 1280, (Fla. 1980); McDonald, supra. Moreover, that kind of process will produce the record this court may require for meaningful consideration of the constitutional question. Compare Laird v. State, 342 So.2d 962, 965 (Fla. 1977).[11]
*851 Jurisdiction is relinquished to the Department of Health and Rehabilitative Services for Section 120.57(1) proceedings and for entry of a final order adequately founded upon a record as required by Section 120.59. See Florida Cities Water Co., supra, 384 So.2d at 1281.
REMANDED.
ERVIN, J., concurs.
BOOTH, J., dissents, with opinion.
BOOTH, Judge, dissenting:
The majority, though now willing to allow further consideration below of appellants' claim, holds that the agency action is not final and that the record here is insufficient for "meaningful consideration" of the constitutional question. Not so. The agency denied registration of birth under the child's chosen name on September 13, 1978, and refused to allow amendment of the registration thereafter on January 16, 1979, to show the correct name. The letter of January 16, 1979, set forth in Footnote 3, infra, is final agency action. Further, the record here includes an HRS declaratory statement issued in another case on similar facts denying use of a hyphenated surname containing the names of both parents. Infra at Footnote 3. The agency has spoken.
As to the "form" of the final agency action here, it is indistinguishable from the letter considered by this court as sufficient in Harris v. Florida Real Estate Commission, 358 So.2d 1123 (Fla. 1st DCA 1978), cert. den. 365 So.2d 711 (Fla. 1978), wherein the Florida Real Estate Commission refused to accept and register the name of the appellant's real estate agency. Here, as in Harris, there was no question raised as to the authority of the registrar in speaking for the agency. Here, as in Harris, the agency's policies and the legal and factual basis thereof have been argued and briefed before this court. We may assume, for the purposes of this appeal, the truth of the factual contentions and policy statements made by the agency and pass on to the question of law presented.
The basis for the action of HRS in denying appellants' right to have the birth of their child registered in the child's chosen surname, a hyphenated name of both parents, is Florida Statutes § 382.16(5)(a).[1] This statute suffers the same constitutional infirmities as the statute held unconstitutional in Jech v. Burch, 466 F. Supp. 714 (D.C.Hawaii 1979). In Florida and at common law, prior to the enactment of § 382.16, effective July 1, 1977,[2] parents could give their children hyphenated names. Attorney General Opinion 76-235 (December 21, 1976).
Petitioners, June Rice and Stephen Stitt, are husband and wife, and parents of a son born September 9, 1978, in Alachua County, Florida. Petitioners were legally married at the time of conception and birth of said son, with the wife retaining her maiden surname of Rice and using it for all purposes. On September 13, 1978, petitioners attempted to register the child with the Bureau of Vital Statistics under the name of Austin John Rice. The local registrar refused such registration on the grounds that it did not comply with § 382.16(5)(a). *852 Thereafter Petitioner Stitt registered the child under the name Austin John Stitt, as required by the registrar, against the wishes of both natural parents. Subsequently, petitioners obtained an amendment form from the Bureau of Vital Statistics and sought to amend the birth certificate to show the child's surname as Rice-Stitt, the hyphenated name containing surnames of both natural parents. On January 16, 1979, this request for amendment was denied by Ms. Myrna Wisham, Supervisor, Amendment Unit, Bureau of Vital Statistics.[3]
Petitioners have appealed the denial of the requested amendment, asserting deprivation of rights of privacy, and denial of due process and equal protection under the Constitutions of Florida and of the United States.
Respondents contend that the statute applies equally to deny all persons, whether married or unmarried, the right to choose the surname of their child, stating in their brief:
The statute does not give anyone the `right' to choose the surname of their child. This statute determines the surname of the child based on the marital status of the parents and denies the right of choice equally to married and unmarried parents. (emphasis theirs)
As justification for this abridgment of personal choice in a matter generally conceded to be of great importance to the individual, respondents assert nothing more than administrative convenience. Perhaps more convenient, and as anticipated by George Orwell in 1984, is the substitution of numbers for names. The Florida Statute here in question could well be the first step in that direction.
In Jech v. Burch, supra, Chief Judge Samuel P. King rejected arguments similar to those advanced here based on administrative convenience in the operation of the Registrar of Births in the Department of Health, stating, in part (466 F. Supp. at 718):
For reasons which have still not been explained satisfactorily to me, the department is completely defeated by the problem of indexing a child's surname such as `Jebef', which does not belong to either of the parents ... Assuming that administrative convenience dictates a continuation of a male-oriented indexing system, the registrar did not make clear to me why there could not be a cross-reference [to the father's name].
Respondents further point out that the computer could encounter difficulties where two persons with hyphenated names meet, marry and have a child of their own. In the bureaucratic quagmire, the idiosyncrasies of a computer are more important than the rights of individuals who must be named, tagged and indexed as prescribed.
Respondents contend that § 382.16(5)(a) is "indicative of the common law." That argument, however, was rejected by this court in Davis v. Roos, 326 So.2d 226 (Fla. 1st DCA 1976), wherein the Department of Highway Safety and Motor Vehicles argued, based on an early New York decision,[4] that "by the common law" a woman upon her marriage takes her husband's surname, and her maiden name is "absolutely lost." This court disagreed and held that a woman was entitled to have her driver's license issued in her maiden name, stating (326 So.2d at 228, 229):

*853 The common law regarded the Christian name, with the sanction of baptism behind it, as all important. No requirement demanded that a woman adopt the surname of her husband when she married, and earlier records showed that husband and wife often were known by different names... [A]fter reviewing the extensive authorities on the subject, we conclude that the common law of England on July 4, 1776, did not by operation of law engraft the husband's surname upon the wife. In Florida there is no statute or judicial decision requiring a woman to take her husband's surname upon marriage. Although it is the general custom for a woman to change her name upon marriage to that of the husband, the law does not compel her to do so.
In Doe v. Dunning, 549 P.2d 1, 3 (Wash. 1976), the court considered the history of the individual right to choose a name, and stated:
As more women exercise their right to retain their own surname after marriage, the likelihood that children will be given a surname other than the paternal surname increases ... Property and inheritance are also factors which may lead to the use of the mother's surname. Historically, it was not uncommon for children to take the mother's surname where she owned the most property or had the largest estate. Reany, Origins of English Surnames 84, 85 (1967). Cultural heritage may also be a relevant consideration, for example, persons of Spanish ancestry often use both parents' surnames as the surname of the child . .
In Secretary of The Commonwealth v. City Clerk of Lowell, 373 Mass. 178, 366 N.E.2d 717, 723, 725 (1977), the court held:
We have been authoritatively advised that freedom of personal choice in matters of family life is one of the liberties protected by the due process clause of the Fourteenth Amendment, and that there is a private realm of family life which the State cannot enter. Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), and cases cited.
* * * * * *
All these recent developments seem to us to indicate strongly that the common law principle of freedom of choice in the matter of names is not out of harmony with modern conditions.
* * * * * *
We think the common law principle of freedom of choice in the matter of names extends to the name chosen by a married couple for their child. They may change their own names at will, and need not have the same surname. It seems to us to follow that they need not give their child the father's surname, though of course they may.
Neither Doe v. Dunning, supra, nor Secretary of The Commonwealth v. City Clerk of Lowell, supra, involved statutes such as Florida's which purports to require that the name of a legitimate child be the surname of the father. Florida and Hawaii may well be the only states having adopted such statutes.[5]
The Federal District Court, in striking the Hawaii statute, held (466 F. Supp. at 719, 720):
... [A] proper interpretation of Anglo-American political and legal history and precedent leads to the conclusion that parents have a common law right to give their child any name they wish, and that the Fourteenth Amendment protects this right from arbitrary state action.
* * * * * *
What is the state interest in refusing to allow parents to give their child at birth a name which they may immediately confer by way of change of name? I fail to see any such interest. *854 We are not dealing with the statutory requirement that the birth of a child in Hawaii be reported to the State Department Health ... The public interest in the fact of a birth clearly overrides anyone's desire not to report this information.
We are also not dealing with the indexing system of the registrar of births. If the registrar wants to register the birth certificate of `Adrian Jebef' under `Adrian Befurt,' or any other name or symbol, that is a matter for regulation as an internal administrative decision of the State Department of Health.
* * * * * *
The statutory provision for change of name is not a substitute for the right to insist that one's child at birth was given the original name designated. This merely restates the first proposition that the naming of a child is protected against arbitrary or unreasonable state action. (emphasis theirs)
Respondents here have failed to put forth any overriding State interest sufficient to allow this interference with the personal right of petitioners to name their child. The value of the right abridged far exceeds the inconvenience of the State in accommodating that right.
The majority opinion expresses great concern for the procedural posture of the case now before us but little concern for the toils and tribulations of these individuals who have sought, since September of 1978, to have the birth of their child correctly registered and certificate issued. Nothing is lacking from the record here which can be supplied by further proceedings below. The agency has stated its policy, and that policy is facially supported, at least, by the language of the statute. The agency will not change its collective "mind" short of ruling by this court.
Nor is there need for further ruling on this court's authority to address, ab initio, constitutional issues which arise in administrative proceedings.[6] The authority of the court to remand for further factual findings, where needed, is also clear. Florida Statutes § 120.68. Not clear is what can be gained in this case by further proceedings below. What is to be lost is obvious: time, money and peace-of-mind for individuals relegated by the majority to the administrative morass.
I dissent.
NOTES
[1] The Department of Health and Rehabilitative Services has charge of registering vital statistics. Section 382.01, Florida Statutes (1979). Unless some subagency of the Department is by rule or statute responsible for final agency action, the Department is the proper party appellee on this appeal. Section 120.52(2); Fla. App.R. 9.020(f), 9.110. The notice of appeal in this matter superfluously lists David H. Pingree, then Secretary of the Department; Everett Williams, of "Bureau of Vital Statistics"; and Myrna Wisham, "Supervisor, Amendment Unit, Bureau of Vital Statistics," as parties appellee. We have dropped those misdesignated names from the caption. No statute or organizational rule of the Department, Fla. Admin. Code Ch. 10-3, suggests the existence of a Bureau of Vital Statistics within the Department, so we assume it does not exist. Such misdesignations in the notice of appeal cause minor inconveniences and inconsistencies on our docket and in West Publishing Company's alphabetical listings of cases, and potential difficulties in identifying the agency and agency head within a Department who is responsible for final agency action. That may become critical in determining who, other than a DOAH hearing officer, may conduct formal Section 120.57(1) proceedings. Every Department's organizational rules, in "stating the general course and method of its operations," Section 120.53(1)(a), should reliably identify any agency within the Department, and any agency head other than the Department head, who is responsible for final agency action of a certain character.
[2] Section 382.16(5)(a) provides:

If the mother was married at the time of conception, the name of her husband at such time shall be entered on the certificate as the father of the child, and the surname of the child shall be entered on the certificate as that of the husband, unless paternity has been determined otherwise by a court of competent jurisdiction.
[3] "Agency action" which is reviewable by a district court of appeal, Section 120.68, includes "a rule or order, or the equivalent... ." Section 120.52(2).
[4] A. Bickel, The Least Dangerous Branch, p. 24 (1962).
[5] E.g., Cross Key Waterways v. Askew, 351 So.2d 1062 (Fla. 1st DCA 1977), affirmed, 372 So.2d 913 (Fla. 1978); Estuary Properties, Inc. v. Askew, 381 So.2d 1126 (Fla. 1st DCA 1979).
[6] Coulter v. Davin, 373 So.2d 423 (Fla. 2d DCA 1979); E.T. Legg and Co. v. Franza, 383 So.2d 963 (Fla. 4th DCA 1980); Fraternal Order of Police, etc. v. City of Miami, 384 So.2d 726 (Fla. 3d DCA 1980). While we disagree with Coulter's reasoning that a district court of appeal may not determine constitutional questions of statutory or rule validity inhering in review of agency action, Coulter's holding on its own facts  that res judicata does not bar circuit court determination of such questions after a party has foregone his 120.68 appeal  may well be justified. If there was no appeal from the agency action, the policy behind res judicata is not served by foreclosing circuit court litigation on questions that could not have been effectively raised for decision by the agency. See Continental Cas. Co. v. Hartford Accid. & Indem. Co., 151 Fla. 742, 10 So.2d 440 (1942).
[7] This now-familiar phrase is of course borrowed from another context, Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695, 699 (Fla. 1978), where Justice England wrote for the Court that

The determination of whether the circumstances of a particular controversy warrant judicial intervention [by a circuit court], then, is ultimately one of policy rather than power, and it is to that policy question that the First District Court of Appeal has addressed itself in Willis [infra fn. 9] and [School Board of Leon County v.] Mitchell. [346 So.2d 562 (Fla. 1st DCA 1977)].
[8] State ex rel. Dept. of General Services v. Willis, 344 So.2d 580, 589-90 (Fla. 1st DCA 1977).
[9] Willis, 344 So.2d at 590:

[S]ome agency errors may be so egregious or devastating that the promised administrative remedy is too little or too late. In that case equitable power of a circuit court must intervene.
Perhaps the same may be said of the necessity for circuit court intervention when resolution of the constitutional question cannot await a Section 120.68 appeal.
[10] Amrep, 358 So.2d at 1349, fn. 5:

The conclusion that this action is cognizable as a matter of original jurisdiction in the circuit court does not affect the jurisdiction of the district courts of appeal and this Court to review agency action pursuant to § 120.68, Fla. Stat. (1975). (Emphasis by the Court.)
[11] Laird, 342 So.2d at 965:

... The record before us is simply inadequate to support a determination of whether the health hazards of smoking marijuana justify its proscription to the general public. None of the parties really argued whether the legislature lacks a "rational basis" for its decision to ban private possession of cannabis. (since we have determined that there is no fundamental right to smoke marijuana, the test becomes whether there is a "rational basis" for outlawing such an activity as opposed to a "compelling state interest" in the subject matter of the legislation.) Thus in affirming the trial court, we do not foreclose the possibility of making such a determination on a properly-developed record wherein both sides have had an opportunity to present evidence of competing expert authorities before an impartial tribunal. [Footnotes omitted.]
[1] Florida Statutes, § 382.16(5)(a):

If the mother was married at the time of conception, the name of her husband at such time shall be entered on the certificate as the father of the child, and the surname of the child shall be entered on the certificate as that of the husband, unless paternity has been determined otherwise by a court of competent jurisdiction.
[2] Laws of Florida, 77-319.
[3] Letter of January 16, 1979, Bureau of Vital Statistics:

According to Florida Statute 382.16(5)(a), we are unable to amend Austin's birth record to show his surname as Rice-Stitt. If you wish his birth record to show a hyphenated surname, we suggest you seek legal assistance in regard to having his name legally changed. Upon receipt of a certified copy of the court order changing his name, a statement will be attached to his birth record. We do not file a new birth record when a change of name is granted as this does not affect parentage.
The record includes a Declaratory Statement issued by HRS In Re Petition of Ruth Lee Harvey, Case No. 78-6DS (January 8, 1979), ruling that, on similar facts, § 382.16(5)(a) does not permit use of a hyphenated surname containing the names of both parents. Nevertheless, HRS subsequently recorded the hyphenated name as originally requested by Mrs. Harvey and rendered moot any judicial proceedings on the validity of the statute.
[4] Chapman v. Phoenix National Bank, 85 N.Y. 437 (1881).
[5] Doe v. Dunning, 549 P.2d 1, 3 (Wash. 1976); Lamber, "A Married Woman's Surname: Is Custom Law?", 1973 Wash.Univ.L.Q., 779.
[6] See, e.g., Escambia County Sheriff's Department v. Police Benevolent Association, Inc., 376 So.2d 435, 436 (Fla. 1st DCA 1979):

Appellee argues that the appellant could not properly bring its constitutional challenge before us because the issue was not raised below. Appellee's argument is without merit because the `administrative process cannot resolve a constitutional attack upon a statute, rule or regulation.' Carrollwood State Bank v. Lewis, 362 So.2d 110, 113-14 (Fla. 1st DCA 1978).