399 So.2d 1013 (1981)
Dwight S. CENAC, Appellant,
v.
FLORIDA STATE BOARD OF ACCOUNTANCY, Appellee.
Nos. OO-68, OO-433.
District Court of Appeal of Florida, First District.
May 29, 1981.
*1014 A. August Quesada, Jr. and Frederick R. Brock of Wildt, Quesada, Brock & Skinner, Jacksonville, for appellant.
James S. Quincey and Samuel Hankin of Clayton, Duncan, Johnston, Quincey, Ireland, Felder & Gadd, Gainesville, for appellee.
PER CURIAM.
Cenac appeals a final order of the Florida State Board of Accountancy (the Board) revoking his CPA license and an order of the hearing officer denying him relief in a related rule challenge proceeding. We affirm in part and reverse in part.
The Board rescinded Cenac's license because while holding a CPA license and practicing public accounting, he improperly offered services for a contingent fee[1], directly and indirectly solicited public accounting engagements[2], encroached on other practitioners[3], rendered services of a type performed by other professionals without complying with Chapters 1-8 of Chapter 21A,[4] and practiced without reestablishing competency.[5] In Point II A, which we find appropriate to discuss first, Cenac argues that the Board erroneously rejected some of the hearing officer's findings of fact. We agree because there was competent substantial evidence to support those findings. § 120.57(1)(b)9., Fla. Stat. (Supp. 1978).

THE FACTS
We paraphrase the hearing officer's findings of fact as follows:
After college, Cenac worked two years for an accounting firm, receiving his certificate in 1973. Blue Cross of Florida employed him from 1973 until 1977 when a health care provider in Puerto Rico hired him to establish procedures to improve Medicare and Medicaid reimbursement. Cenac's understanding of Medicare regulations, acquired while working at Blue Cross, coupled with his experience in Puerto Rico, convinced him that many health care providers needed special consulting concerning their financial record keeping. Thus, in 1977, Cenac formed Health Care Management Consulting Inc. (HCMC). He sent a "proposal" to health care providers, which informed them of HCMC's services, clientele, and fee arrangement.
At this time Cenac notified the Board that he was no longer performing public accounting and requested an exemption from reestablishing his competency. Accordingly, his CPA certificate became inoperative. See § 473.111(9), Fla. Stat. (1977), permitting a CPA certificate to be marked inoperative if the CPA is not practicing public accounting and exempting the certificate holder from reestablishing competency for such period.
Two other HCMC consultants perform services similar to those performed by Cenac. Neither is a CPA and both obtained their special expertise while working in the intermediary field between the government and the health care provider.
HCMC provides specialized services not provided by public accountants such as setting up books and records for health care providers, preparing cost reports, providing assistance in setting rates, and providing general familiarity with Medicare regulations. Many of HCMC's services, inasmuch as they involve financial records, are the *1015 same type services provided by Florida practitioners, that is, CPAs practicing public accounting in Florida.
Cenac does not hold himself out as a CPA. Although CPA certificates hang on his office wall, no clients visit the office. Cenac, by submitting the HCMC proposal to health care providers, is both advertising and soliciting business. HCMC has also obtained business previously performed by Florida practitioners. Finally, the proposal offers services on a contingent fee basis, i.e., a percentage of the additional Medicare funds obtained as a result of HCMC's services.
No audits unrelated to Medicare or Medicaid are performed, and financial statements prepared by HCMC do not refer to generally accepted accounting principles and generally accepted auditing standards, nor do they purport to express or disclaim an opinion as to the fairness of the presentation. The other employees of HCMC are not in violation of Chapter 473 because they are not certified.

THE BOARD'S REJECTION OF CERTAIN FACTS
Section 120.57(1)(b)9., Fla. Stat. (Supp. 1978) limits the authority of an agency to reject the hearing officer's findings of fact as follows:
The agency in its final order may reject or modify the conclusions of law and interpretation of administration rules in the recommended order, but may not reject or modify the findings of fact unless the agency first determines from a review of the complete record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law. [Emphasis added.]
With this in mind, we examine the Board's determination that Cenac was indeed holding himself out as a CPA. Although certificates were hung on the office wall, this is only prima facie evidence of holding out. § 473.22, Fla. Stat. (1977). Obviously, the hearing officer believed Cenac's testimony that no clients visited the office and contrary to the Board's assertion, there is no evidence he told people he was a CPA. At best, Cenac admitted that if asked whether or not he was a CPA, he would answer he was "nonpracticing." Such evidence is insufficient to support the Board's finding that there was no competent substantial evidence to support the hearing officer's finding that Cenac was not holding himself out as a CPA.[6]
The Board also rejected the finding that Cenac and other HCMC employees gained their special expertise while working in the intermediary field, stating that the evidence supporting the finding was hearsay. However, Cenac and another HCMC employee testified they had obtained most of their experience while working with Blue Cross. Therefore, this finding was also erroneously rejected.
Finally, the Board rejected the finding that many of HCMC's services were services performed by certified public accounting firms. Instead, the Board found that all services performed by HCMC were services performed by CPA firms. However, the evidence on this issue was somewhat contradictory, with Cenac listing certain skills that CPA firms would not do, but at the same time admitting that he was aware of some firms that had purported to do the same work. Another employee testified that HCMC uses skills other than normal accounting and auditing skills and he knew of no CPA firms doing all of the same work. Therefore, the Board's conclusion that both witnesses indicated that "all" services performed by HCMC were services *1016 performed by Florida CPA firms, is incorrect.
The hearing officer in an administrative proceeding is the trier of fact, and he or she is privileged to weigh and reject conflicting evidence. David Clark and Assoc., Inc. v. Kennedy, 390 So.2d 149 (Fla. 1st DCA 1980). After considering the above, we conclude that: the factual issues surrounding the order are susceptible of ordinary methods of proof, the Board does not claim special insight into any of the matters, and there is competent substantial evidence in the record to support the findings of the hearing officer.[7] See Samson v. Bureau of Community Med. Fac., 363 So.2d 412, 415-416 (Fla. 1st DCA 1978); Catholic Social Services v. Dept. of Commerce, 365 So.2d 427 (Fla. 1st DCA 1978); McDonald v. Dept. of Banking and Finance, 346 So.2d 569, 574, 579 (Fla. 1st DCA 1977).

CONCLUSIONS OF LAW
Whether Cenac is guilty of violating numerous provisions of Chapter 473 hinges upon whether Cenac was practicing "public accounting" under the facts we have framed above. This issue involves Points III A and III B of Cenac's brief, which urge that Cenac was not practicing public accounting, not holding out, and therefore, not in violation of law. Chapter 473 provides for two different applications of the term "public accounting." Section 473.011(5) states:
(5) Whenever the term "public accounting" is used in this chapter, it shall be deemed and construed to mean:
(a) All services offered to or performed for the public by a Florida practitioner or an out-of-state practitioner involving the use of accounting skills, specifically including, but not limited to, management services, and
(b) All services offered to or performed for the public by any other person, acting as an individual, as a partner or employee of a partnership, as a stockholder, officer or employee of a professional corporation, or as an officer or employee of any other corporation, involving the use of accounting skills, except as follows:
1. The keeping of books of account and related accounting records, including payroll records, and preparing trial balances;
2. The preparation of financial statements and submission thereof to others, if such statements are issued without certificate of expression or disclaimer of opinion as to the fairness of the representations shown therein and do not purport to result from an audit or examination;
.....
4. The rendition of other management services.
Literally read, the statute indicates that if Cenac was a "Florida practitioner" under (5)(a), rather than "any other person" under (5)(b), then he was also practicing public accounting because he unquestionably performed accounting and management services. Notably, (5)(a) refers to all such services.
Was Cenac a "Florida practitioner?" Section 473.011(2) defines "Florida practitioner" to mean "a certified public accountant ... engaged in the practice of public accounting in Florida." In turn, a CPA is "a person holding a certificate to practice as such, issued by the state under this chapter, or any law of the state heretofore in force and effect. § 473.011(1), Fla. Stat. (1977). Thus, again reading the statutes literally, it appears that Cenac is a CPA because he holds a CPA certificate, albeit inoperative while he is not practicing public accounting. *1017 See § 473.111(9), supra. Although we are confronted by the somewhat confusing circular definition of public accounting, as pointed out by the hearing officer, the agency interpretation of these statutes has not been so literal.
The hearing officer observed in his conclusions of law that in Declaratory Statement 75-01, the Board did not consider (5)(a) applicable because the CPA there did not hold himself out as a practitioner. In that case, two CPAs were shareholders and employees of a corporation which engaged in public practice, except that the corporation also sold insurance. The accounting function involved pension and profit sharing plans tied to insurance sales with the major emphasis on the sale of insurance. Financial statements prepared by the corporation did not refer to generally accepted accounting principles and generally accepted auditing standards, nor did they purport to express or disclaim an opinion as to the fairness of the presentation. In construing Sections 473.04, 473.011(1) and (2), and Rule 21A-2.10,[8] the Board concluded that "A person who does not profess to the public that he is a certified public accountant, and thus is more qualified to render these services than unlicensed persons performing similar services, it not a person `practicing as a certified public accountant ...'" Subsequently, in Declaratory Statement 76-02, without explication of the rationale for the result reached, the Board found that a CPA who had formed a partnership for the purpose of seeking and performing accounting, bookkeeping, and related tax work for the public, was nevertheless a Florida practitioner engaged in the practice of public accounting although he did not hold himself out to the public as a CPA. The hearing officer found, and we agree, that the facts here are closely analogous to those involved in Declaratory Statement 75-01.
Additionally, the hearing officer wrestled with the constitutionality of a contrary interpretation of the pertinent statutes.[9] The Board, however, without discussing the implications of its prior practices in these matters or the implications of construing Chapter 473 to require certificate revocation in this case, concluded that Cenac was a Florida practitioner practicing public accounting; consequently, the Board then listed numerous Chapter 473 violations.
We conclude that the proper course is for us to remand this cause for the entry of an agency order consistent with the hearing officer's findings of fact, without our first ruling on the proper interpretation to be given the pertinent statutes. Presumably, the agency's conclusions of law were based upon its revised findings of fact, which we have now concluded to be erroneous. Therefore, we think it would be premature for us to pass on the question of whether Cenac's conduct could constitutionally *1018 fall within the prohibitions of Chapter 473 and to expound on the meaning of pertinent statutes which are not clearly unambiguous. The APA guides us in this regard. Section 120.68(12)(b), Fla. Stat. (Supp. 1978) provides:
The court shall remand the case to the agency if it finds the agency's exercise of discretion to be:
.....
(b) Inconsistent with an agency rule, an officially stated policy, or a prior agency practice, if deviation therefrom is not explained by the agency .. . but the court shall not substitute its judgment for that of the agency on an issue of discretion.
Here the Board's order is at least arguably inconsistent with the policy or practice established in Declaratory Statement 75-01 under the facts found by the hearing officer. See State Dept. of Health and Rehabilitative Services v. Barr, 359 So.2d 503 (Fla. 1st DCA 1978), recognizing that declaratory statements are final agency action, are reviewable, and have the effect of stare decisis. Furthermore, we have consistently recognized that questions of statutory interpretation are for the agency to decide in the first instance. Roberts v. Ayers, on petition for rehearing, 380 So.2d 1057, 1060 (Fla. 1st DCA 1980); Rice v. Dept. of Health and Rehab. Services, 386 So.2d 844, 847, 850 (Fla. 1st DCA 1980), wherein we also noted that "the deference due the agency is ... less for its judgment on questions of law than for its greater familiarity with the statutory scheme and its expertise in the field regulated."
Therefore, under the circumstances presented, where the agency's order must fail because based upon erroneously adopted conclusions of fact, the agency will be given an opportunity to enter another order justifying its decision on the basis of law or policy if it wishes to adhere to its initial decision. However, we caution that the agency has a "duty to explicate its nonrule interpretation of the governing statute by conventional proof methods as far as reasonably possible." ABC Liquors, Inc. v. Dept. of Business Regulation, 397 So.2d 696 (Fla. 1st DCA 1981). Put another way, "[W]hen an agency elects to adopt incipient policy in a non-rule proceeding, there must be adequate support for its decision in the record of the proceeding." See Florida Cities Water Company v. Public Service Comm., 384 So.2d 1280 (Fla. 1980), where contrary to prior practice and the hearing officer's recommendation, the Commission disallowed deductions, "offering no reason for the abrupt discontinuance of prior agency policy other than it was `wrong as a matter of law.'" There must be an evidentiary basis in the record for an agency's factual premise and its reasoning from a statute if they are capable of being demonstrated by expert testimony, documentary opinion, or other appropriate evidence even though the agency's conclusions are purportedly based upon matters of common knowledge, economic logic, or abstract statutory interpretation. Anheuser-Busch, Inc. v. Dept. of Business Regulation, 393 So.2d 1177 at 1182 (Fla. 1st DCA 1980).
In conclusion, should the agency choose to uphold its decision, under the circumstances its order must contain more than a summary conclusion that Cenac is a Florida practitioner practicing public accounting under Chapter 473, and a list of the statutes allegedly violated. Consonant with the APA, it must explicate its reasoning and there must be adequate support for its decision in the record.
In the rule challenge proceeding, which Cenac appeals in Point I, he urges that the Board failed to follow rulemaking procedures concerning an alleged statement, entitled "Note", which explained the position of the Board regarding Declaratory Statements 75-01 and 76-02, discussed above. We find that this note was not an agency statement, intended by its own effect to create certain rights. See McDonald, supra, 346 So.2d at 580-581; § 120.52(14), Fla. Stat. (1977). Rather, it was editorial in nature, having been written by the executive director of the Board, and intended merely to explain the effect of the two declaratory statements which appeared together in a publication of the Florida Accountancy *1019 News. Therefore, we affirm the hearing officer's determination that the "note" was not a rule.
As to the other points raised, we find no basis in the record that the Board denied appellant substantive due process by allegedly acting as investigator, prosecutor, and judge. (Point III C) Because of our reversal, we do not regard it necessary to rule on the challenge to the constitutionality of the statute prohibiting solicitation by certified public accountants. (Point III D) Finally, there is no factual basis in the record to support the claim that the hearing officer erred in denying a motion to disqualify all members of the Board for bias and prejudice. (Point IV)
Accordingly, we affirm Points I, II C,[10] III C and IV. We reverse for the reasons stated with respect to Points II A, III A, and III B. Our disposition of this appeal makes it premature or unnecessary for us to rule on the remaining issues.[11]
The cause is remanded for entry of a new order consistent with this opinion and based on the existing record.[12]
McCORD and SMITH, JJ., concur.
WENTWORTH, J., concurs in conclusion only.
NOTES
[1] Contrary to § 473.271, Fla. Stat. (1977); Fla. Admin. Code Rule 21A 5.02.
[2] Contrary to § 473.291; Rule 21A 7.02.
[3] Contrary to Rule 21A 6.01.
[4] Contrary to Rule 21A 7.06.
[5] Contrary to § 473.111(9)(a)(1).
[6] The Board, for the first time in its brief, contends that Cenac was "holding out" because of certain statements in the proposal. However, this was not urged below nor was it a subject of concern in the orders below. Therefore, we are unwilling to make the factual determination on appeal that representations in the proposal showed Cenac was holding himself out as a CPA.
[7] Thus, we find it unnecessary to rule on Cenac's challenge to the adequacy of the order under § 120.59(2) Fla. Stat. (1977). (Point II B) Also, we reject his argument that violation of the 90-day rule under § 120.59(1)(b) automatically invalidates the agency's order. (Point II C) See Jess Parrish Memorial Hosp. v. Florida Public Employees Relations Comm., 364 So.2d 777 (Fla. 1st DCA 1978); G & B of Jacksonville, Inc. v. Dept. of Business Regulation, 362 So.2d 951 (Fla. 1st DCA 1978).
[8] 21 A-2.10 Practice of, or practicing public accounting. "Practice of, or practicing public accounting" shall be deemed and construed to mean offering to perform, performing, or holding oneself out as being qualified to perform, those services described in Section 473.011(5), F.S. for the general public and shall not include the services rendered as an employee of a governmental unit or private enterprise.

Section 473.04 provides in part: "It [the Board] shall prescribe a standard of professional conduct and formulate reasonable rules defining unethical practices for persons holding certificates... Every person practicing as a certified public accountant .. . shall be governed ... by rules ... adopted by the Board."
[9] For example, the hearing officer found it difficult to conclude that the acts of Cenac, in providing services only to health care providers, without holding himself out as a CPA, in any manner harmed the public so as to justify the use of the police power in revoking Cenac's certificate. See Florida Accountants Assoc. v. Dandelake, 98 So.2d 323 (Fla. 1957), discussing legitimate dangers sought to be eliminated through regulation of accountants; Junco v. State Board of Accountancy, 390 So.2d 329 (Fla. 1980), discussing generally the limit of the state's authority to regulate professions and quoting that "The purpose of Chapter 473 is to ensure that `only those persons who meet the high standards of proficiency established by the statute and the Board may practice as certified public accountants in this state.'" [Emphasis supplied.] See generally State Board of Medical Examiners of Florida v. Rogers, M.D., 387 So.2d 937 (Fla. 1980), providing an example of a regulating board acting in an unreasonable exercise of the police power.
[10] Point II C complains of denial of due process by the Board in failing to comply with 90-day provision of Section 120.59(1)(b), Florida Statutes.
[11] Point II B complains of denial of procedural due process by the Board in its failure to consider and respond to appellant's proposed findings of fact and exceptions to the recommended order. Point III generally asserts a denial of substantive due process by the Board in exceeding its statutory authority. Point III D asserts a violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1, 2 (1975), as well as violation of appellant's right of free speech and equal protection of the laws in connection with the charges of offering services on a contingent fee basis, and solicitation (see footnotes 1 and 2, supra).
[12] Appellant's request for assessment of attorney's fees and costs is denied. See Jess Parrish Memorial Hospital v. PERC, 364 So.2d 777 (Fla. 1st DCA 1978).