PER CURIAM.
Hartnett appeals an order of the Insurance Commissioner which revoked his licenses and eligibility to hold the licenses of ordinary life including disability, general lines, surplus lines, and disability. Hartnett urges the Commissioner erred in concluding that he had violated Sections 626.621(2) and 626.611(10), Florida Statutes (1975). We reverse.
Hartnett was charged with violations of the insurance code in six different counts. After an administrative hearing, the hearing officer entered an order finding that the evidence sustained Counts I and VI and recommending that Hartnett’s licenses and his eligibility to hold the licenses be suspended for a period of six months. The Insurance Commissioner adopted the hearing officer’s findings of fact and conclusions of law, but rejected the hearing officer’s recommended penalty and instead ordered that Hartnett’s licenses be revoked.[1]
Hartnett was president of Southern American Fire Insurance Company (Southern American). Although he did not hold a 220 general lines license with the company, Hartnett served as its general agent. As general agent, Hartnett had the power to appoint sub-agents who were licensed by the company. North Star Agency of Hollywood (North Star) was established as a sub-agency of Southern American.
Count I alleged that Hartnett had violated numerous provisions of the insurance code, particularly Sections 626.621(2) and 626.957, Florida Statutes (1975), by submitting to the Department two quarterly financial statements of Southern American which listed as admitted assets agents’ balances which were over ninety (90) days old and due from agencies owned, controlled, or directed by Hartnett. At the hearing, it was stipulated that the March 31, 1975, and the June 30, 1975, quarterly statements of Southern American filed with the Department reflected a substantial amount of agents’ balances which were over ninety (90) days old which balances were due from agencies in which Hartnett had an interest as an officer, director, or stockholder. It was further stipulated that the elimination of these agents’ balances would have left Southern American impaired under usual insurance accounting practices. The quarterly statements were signed by Hartnett in his capacity as president of Southern American.
The hearing officer found, upon conflicting evidence, that in 1969 various officials of the Department had discussions with Hartnett regarding agents’ balances which were over ninety (90) days old. Conflicting evidence, the hearing officer also found that Hartnett, in 1972, had instructed Mr. Huard, the Assistant Treasurer of Southern American who had prepared the quarterly statements in question, not to show the over ninety-day old balances on the workup sheet which was prepared in order to compile the quarterly statements.[2]. The hearing officer also found that the workup sheets had been approved by Hartnett.
*1182 Section 626.621(2) authorizes the discretionary suspension or revocation of the license of any agent where the Department finds that the licensee has “[violated] . . . any provision of this code or of any other law applicable to the business of insurance' in the course of dealing under the license .. . . ” Section 624.424(1), Florida Statutes (1975), requires insurers to annually file with the Department a full and true statement of its financial condition, transactions, and affairs as of the December 31 preceding. Subsection 6 provides:
In addition to information called for and furnished in connection with its annual statement, an insurer shall furnish to the department as soon as reasonably possible such information as to its transactions or affairs as the department may from time to time request in writing. All such information furnished pursuant to the department’s request shall be verified by the oath of two executive officers of the insurer, or, if a reciprocal insurer, by the oath of the attorney in fact or its like officers if a corporation.
Section 626.957, Florida Statutes (1975), provides:
(1) No person shall file with any supervisory or other public official, or make, publish, disseminate, circulate or deliver to any person, or place before the public, or cause directly or indirectly, to be made, published, disseminated, circulated, delivered to any person, or placed before the public, any false statement of financial condition of an insurer with intent to deceive.
(2) No person shall make any false entry in any book, report, or statement of any insurer with intent to deceive any agent or examiner lawfully appointed to examine into its condition or into any of its affairs, or any public official to whom such insurer is required by law to report, or who has authority by law to examine into its condition or into any of its affairs, or, with like intent, willfully omit to make a true entry of any material fact pertaining to the business of the insurer in any book, report, or statement of the insurer.
Section 625.012, Florida Statutes (1975) provides that “[i]n any determination of the financial condition of an insurer,” there shall be allowed as “assets” only such assets as are therein enumerated. (Emphasis supplied). Subsection (5), by defining assets to include “[pjremiums in the course of collection, other than life insurance, not more than 3 months past due, less commissions payable thereon . . .,” impliedly excludes from being allowed as assets those premiums which are more than three months past due.
The Department contended below that discipline was appropriate under Section 626.621(2) because Hartnett had violated Section 626.957 by including agents’ balances over ninety (90) days in the aforementioned quarterly statements contrary to Section 625.012(5). The hearing officer agreed, finding that Hartnett had filed a false quarterly statement because Section 625.012(5) “[prohibited] the listing of agents’ balances of over 90 days as an admitted asset on a company’s financial statement.”
Count VI alleged that Hartnett had violated numerous provisions of the insurance code, particularly Section 626.611(10), by receiving some $55,000 consisting of agents’ balances owed from North Star to Southern American without sending, crediting, or depositing the same to the account of Southern American. At the hearing, it was stipulated that Hartnett, in his capacity as general agent of Southern American, had received some $45,000 from subagent North Star in payment of premiums due in Southern American on policies of insurance issued by Southern American through North Star. The checks were made payable to “William J. Hartnett, Agent.” The hearing officer found that Hartnett did not credit these funds to the account of Southern American, but rather retained the same for his own use. Hartnett claimed that the funds retained by him were monies owed him by Southern American as commissions, salary, and paid claims. The hearing officer further found that some of the monies due Southern American from North Star were still being carried on Southern American’s *1183 books as accounts receivable after North Star’s payment to Hartnett.
Section 626.611(10) authorizes compulsory suspension or revocation of the license of any agent for:
Misappropriation, conversion or unlawful withholding of moneys belonging to insurers or insureds or beneficiaries or to others and received in conduct of business under the license.
The hearing officer found that the evidence supported discipline under Section 626.-611(10), concluding that although Hartnett presented evidence that he was entitled to some of the money he had retained, the monies should have been credited to Southern American and then withdrawn as a payment to a creditor.
Hartnett’s challenge to the Commissioner’s order is primarily premised upon two grounds. First, as to Count I, Hartnett asserts that since there is no requirement by statute or rule that all insurers file quarterly statements with the Department, a violation of the insurance code can not be based upon the filing of a false quarterly statement. In this regard, Hartnett also asserts that Section 625.012 contains no sanctions for violation of its provisions and further does not indicate that its definition of assets is to be applicable to the listing of assets in the quarterly statement. Second, as to both Counts I and VI, Hartnett asserts that since he was not a licensed agent with Southern American, he can not be disciplined for his activities with respect to this company. Hartnett bases this argument upon his contention that the “in the course of dealing with the license” and “in conduct of business under the license” language of Section 626.621(2) and 626.611(10), respectively, limit the applicability of those sections so that Hartnett’s actions in his capacity as corporate officer of Southern American or as supervising or managing general agent of Southern American are not grounds for discipline thereunder.
We find no merit to Hartnett’s first argument with respect to Count I. Section 624.424(6) clearly empowers the Department to request in writing that information in addition to annual statements be furnished by insurers. Hartnett, by voluntarily complying with the Department’s informal request to file quarterly statements, waived any challenge that the quarterly statement was not statutorily required because not requested in writing. By its terms, Section 625.012(5) prohibits the listing of agents’ balances of over 90 days as assets in “any determination of the financial condition of an insurer.” A quarterly statement would be considered a document whose purpose is to determine the financial condition of an insurer. Even if the prohibition against the listing in quarterly statements of agent’s balances of over 90 days as assets were not explicitly made clear by statute, and even though not promulgated as a rule, the Department’s evidence here established that the practice of including such balances in the quarterly statements was condemned by the Department and that such condemnation had been clearly made known to Hartnett, specifically. See, Anheuser-Busch, Inc. v. Dept. of Business Regulation, 393 So.2d 1177, 1181-1182 (Fla. 1st DCA 1981); Bowling v. Dept. of Insurance, 394 So.2d 165, 172-175 (Fla. 1st DCA 1981).
As to appellant’s second contention, that his activities in behalf of Southern American were not “in the course of dealing under the license,” or “in the conduct of business under the license” (Sections 626.-621(2) and 626.611(10), we find no valid basis upon which to expand the meaning of these qualifying phrases to include appellant’s activities as a general agent or corporate officer of Southern American. We emphasize here that appellant held no license of any kind as an agent for Southern American. We agree with appellant’s contention that these statutory provisions, being penal in nature, must be strictly construed and cannot be given a meaning beyond that suggested by the words used. In view of the indisputable fact that appellant’s filing of the quarterly report and his receipt of funds due to Southern American were unconnected with and independent of any insurance license he held by virtue of the Florida Insurance Code, we hold that these acts were not “in the course of dealing” or “in the conduct of business under *1184 the license” within the meaning of these provisions of the statutes.
Notwithstanding our above conclusion, it does not necessarily follow that appellant may not be subjected to disciplinary action by the Department under other statutory provisions cited in the charges against him. Specifically, we refer to Section 626.-611(7), which provides for compulsory revocation or suspension:
(7) For demonstrated lack of fitness and trustworthiness to engage in the business of insurance.
The evidence of appellant’s misdeeds presented in these proceedings might or might not be sufficient to warrant revocation under this section when measured by a “substantiality of evidence” standard appropriate to the nature and consequences of the proceeding. See Bowling v. Department of Insurance, supra.
Neither the hearing officer nor the Department has made findings relating appellant’s conduct specifically to Section 626.611(7), above quoted. Consequently, we do not have the benefit of the Department’s interpretation of this subsection, particularly on the issue of what conduct proscribed by other statutory provisions when committed “in the course of dealing” or “in conduct of business” under a license would satisfy a finding of “lack of fitness or trustworthiness” (Section 626.611(7)) when committed other than “in a course of dealing” or “in conduct of business” under a license. We note here that the task of interpreting the many interrelated statutory provisions found in the licensing and regulatory portions of the Florida Insurance Code is initially one for the Department. Roberts v. Ayers, on petition for rehearing, 380 So.2d 1057, 1060 (Fla. 1st DCA 1980); Rice v. Dept. of Health and Rehab. Services, 386 So.2d 844, 847, 850 (Fla. 1st DCA 1980); and Cenac v. Florida State Bd. of Accountancy, 399 So.2d 1013, 1018 (Fla. 1st DCA 1981). We would venture to suggest, however, that whatever specific infractions gleaned from the statutory language might be deemed to be pertinent to a determination of the “fitness and trustworthiness” standard, the element of “willfulness” found to be necessary in proof of Section 626.611(10) and other violations in Bowling, supra, would be no less essential in a prosecution relying upon the general, all-purpose language of Section 626.611(7).
Because of our conclusion that the hearing officer’s recommendation of disciplinary action was based upon an erroneous interpretation of the statutes, and because the hearing officer failed to rule on the applicability of Section 626.611(7), we think fairness dictates that upon remand the hearing officer be directed to submit an amended order in the light of this opinion before the Department further reviews and acts upon the charges against appellant. We again emphasize the necessity for the agency in its final order to set out the factual premises and reasoning upon which its action is based so as to comply with the mandates of the Administrative Procedures Act and to facilitate judicial review if any follows. See Cenac, supra, and Anheuser-Busch, Inc. v. Department of Business Regulation, supra.
REVERSED AND REMANDED.
ERVIN, LARRY G. SMITH and SHIVERS, JJ., concur.

. The Insurance Commissioner was authorized, after a review of the complete record, to increase the recommended penalty, and this Court may not review the penalty imposed since it is within the permissible range of statutory law. § 120.57(1)(b)9, Fla.Stat. (1975); Fla. Real Estate Comm’n. v. Webb, 367 So.2d 201 (Fla.1978).

. In order to prepare the quarterly statement, Huard first completed a balance sheet. The form utilized provided for the listing of agents’ balances as admitted assets. In the March 31, 1975 balance sheet, Huard listed agents’ balances of $450,809.46. The form contained the following caveat:
Note: The following assets of the Company have been omitted from the above Balance Sheet in conformity with the Insurance Department reportings:
Agents’ balances in excess of 90 days old .... $-
******
In the March 31, 1975 balance sheet, the line designated “Agents’ balances in excess of 90 days old” was left blank. Huard admitted that there were agents’ balances in excess of 90 days old which were therefore consequently included in the figure representing agents’ balances listed as admitted assets. The figure of $450,809.46 was listed as “Agents’ balances ...” in the March 31, 1975 quarterly statement. This practice was repeated in the July 31, 1975 balance sheet and quarterly statement.